NEBRASKA NATIONAL BANK ET AL., APPELLEES, V. F. M.
HALLOWELL ET AL., APPELLEES, AND KEARNEY OPERA
HOUSE COMPANY ET AL., APPELLANTS.

FILED DECEMBER 18, 1901.  No. 9,689.

Commissioner's opinion, Department No. 1.

1. **Appeal:** ERROR IN PROCEDURE. In a case brought to this court on
appeal, alleged errors of the trial court in its rulings on ques-
tions of procedure arising during the progress of the trial will
not be examined.

2. **Creditors' Suit:** ALLEGATION. In a creditors' suit, where no re-
ceiver has been appointed or, asked for, it is not necessary to
allege that the suit is brought on behalf of all creditors• who
desire to join and contribute to the expense.

3. ————: FRAUDULENT CONVEYANCE: In a creditors' suit brought
to set aside a fraudulent conveyance, a petition wherein it is
alleged that the grantor fraudulently conveyed the property
with the intent to place it beyond the reach of his creditors,
and that the conveyance was made without consideration,
states a cause of action, without alleging that the grantee had
knowledge of or participated in the fraud.

4. ————: ————. In a creditors' suit brought to set aside a
fraudulent conveyance, return of execution *nulla bona* is con-
clusive of the question that the creditor has exhausted his legal
remedy, and an answer which alleges that the debtor had prop-
erty subject to levy upon execution, in the absence of an allega-
tion of fraud or collusion on the part of the sheriff, does not
state a defense.

5. **Judgment Creditors:** CONSOLIDATION: PRIORITIES: PRORATING.
Certain judgment creditors consented to a consolidation of
their various bills, no order being at the time made or re-
quested determining their respective priorities, and thereafter
all shared in the prosecution and expense of such consolidated
suit. *Held,* That it does not affirmatively appear that the trial
court erred in requiring such creditors to prorate in the pro-
ceeds of the suit.

APPEAL from the district court for Buffalo county.
Heard below before SULLIVAN, J. *Affirmed.*

Action by the Nebraska National Bank and others
against Florentius M. Hallowell and others, with which

other actions against the same defendants were consolidated, and in which certain creditors of such defendants intervened to set aside certain fraudulent conveyances and for other relief.

*Marston & Marston, Francis G. Hamer, E. C.* and *H. V. Calkins, William Gaslin, Willis L. Hand* and *Richard A. Moore,* for appellants.

*Dryden & Main, Willis D. Oldham, B. O. Hostetler, Bartlett & Baldrige* and *Wharton & Baird, contra.*

KIRKPATRICK, C.

On the 26th day of November, 1895, the Rock Island National Bank recovered a judgment against the Kearney Opera House Company and Rollin L. Downing et al., in the district court for Buffalo county, for $5,236.66. On the same day the First National Bank of Negaunee recovered a judgment against the same defendants for $3,051. Executions were issued upon each of these judgments and returned unsatisfied, and on January 10, 1896, the Rock Island National Bank and the First National Bank of Negaunee filed a creditors' bill in the district court for Buffalo county against the Kearney Opera House Company and others, and joined as defendants a large number of persons who were charged to be fraudulent grantees of the principal defendants. On January 11, 1896, the First National Bank of Elm Creek, Nebraska, recovered a judgment against R. L. Downing by confession, and on January 14, 1896, a transcript of this judgment was filed in the district court, and an execution thereon returned unsatisfied; and on January 17, 1896, the bank filed a creditors' bill against R. L. Downing and his wife, Nancy Downing, to set aside certain conveyances made by R. L. Downing and his wife. On March 31, 1896, the Nebraska National Bank of Omaha recovered a judgment against Florentius M. Hallowell, R. L. Downing and others, in the district court for Douglas county, for $10,000, and on April 2, 1896, a tran-

script of this judgment was filed in the office of the clerk of the district court for Buffalo county, and on the same day an execution was issued, which was subsequently returned unsatisfied for want of property on which to levy. On April 6, 1896, the Nebraska National Bank filed a creditors' bill in the district court for Buffalo county against Florentius M. Hallowell and the other defendants, joining with them a large number of defendants who were charged to be fraudulent grantees of the principal defendants. On March 30, 1896, Lyman Cary, treasurer of Buffalo county, Nebraska, filed in the district court his application for permission to intervene in the creditors' suit of the Rock Island National Bank et al., against the Kearney Opera House Company et al., and on the same day filed his answer and cross-petition, setting up that on March 10, 1896, he obtained a judgment in the district court for Buffalo county against the Kearney National Bank, R. L. Downing et al., for $14,342.04; that on March 16, 1896, he issued an execution thereon, which was subsequently returned unsatisfied for want of property to levy on. Subsequently, and on May 24, 1897, Lyman Cary, treasurer, intervened, and filed a cross-petition in the case of the Nebraska National Bank of Omaha against Hallowell et al., setting up the recovery of the same judgment. On June 17, 1896, the National Bank of the Republic, of New York, filed its cross-petition of intervention in the case of the Rock Island National Bank and the First National Bank of Negaunee, against the Kearney Opera House Company et al., setting up the recovery of a judgment in the circuit court of the United States for the district of Nebraska in the sum of $23,946.35, against R. L. Downing et al., the date on which the judgment was entered not appearing from the record. On May 15, 1896, an execution was duly issued on this judgment out of the circuit court of the United States, which was subsequently, by the marshal, returned unsatisfied for want of property on which to levy. Subsequently to that date a transcript of said judgment was filed in the district court for Buffalo county, and an

execution issued thereon returned unsatisfied. On February 25, 1896, the First National Bank of Waupun recovered a judgment against the Kearney Opera House Company, Florentius M. Hallowell et al., in the district court for Buffalo county, for $1,070, and on January 16, 1896, it recovered a judgment against the same defendants for $3,-248.21. A transcript of this last mentioned judgment was duly filed in the district court for Buffalo county; executions were issued on said judgments and returned unsatisfied; and on June 17, 1896, said First National Bank of Waupun filed its petition of intervention in the case of the Rock Island National Bank and the First National Bank of Negaunee et al., against the Kearney Opera House Company et al. On July 17, 1896, the National Bank of the Republic, of New York, also filed its petition of intervention in the case of the Nebraska National Bank of Omaha against Florentius M. Hallowell et al., setting up the same facts as in its petition in the case of the Rock Island National Bank et al., against the Kearney Opera House Company et al. The petitions and cross-petitions of the various parties mentioned alleged many fraudulent conveyances made by the judgment debtors, which were asked to be set aside. Demurrers to the various petitions and cross-petitions were filed by defendants Maren D. and Frank H. Morrison, and Nancy Downing and R. L. Downing Lumber Company, setting up misjoinder, failure to state facts sufficient to constitute a cause of action, and, as to Lyman Cary, treasurer, that court had no jurisdiction, and that no order had been made by the court permitting the treasurer to intervene. These demurrers were all subsequently overruled by the court; answers were filed by the defendants, and replies were filed by the plaintiffs and the various cross-petitioners. On May 24, 1897, by order of the district court, made by agreement of all parties, the cases were consolidated under the title of "Nebraska National Bank of Omaha v. Florentius M. Hallowell et al."

Numerous errors are alleged by counsel for the various parties, but they may be summarized as follows: (1) That

there was a misjoinder of parties; (2) that no order was made by the court permitting Lyman Cary to intervene; (3) the refusal of the court to impanel a jury at the request of certain of the defendants; (4) the refusal of the court to make special findings; (5) that the court erred in refusing to grant a continuance at the request of certain of the defendants; (6) that the various petitions and cross-petitions fail to state facts sufficient to constitute a cause of action, in this, that the petitions did not allege that the actions were brought for all the creditors, and that there was no allegation that certain of the grantees participated in the fraud of their grantors; (7) that the court erred in sustaining demurrers to that portion of defendants' answers which pleaded that the Kearney Opera House Company had sufficient property out of which the judgment could have been made; (8) that there was not sufficient evidence to sustain the judgment and findings of the trial court; (9) that the court erred in allowing the various plaintiffs and cross-petitioners liens of equal priority on whatsoever proceeds might be realized from a sale of the property uncovered.

Of the first five errors complained of, it may be said that they relate to rulings of the trial court on questions of procedure arising during the progress of the trial, and can only be regarded as errors of law occurring at the trial, and as such can not be presented to or considered by this court on appeal. It is the established rule of this court that rulings of the trial court purely interlocutory in their nature can only be reviewed by proceedings in error. In the case of *Lowe v. Riley,* 57 Nebr., 252, this court said: "Again, if the district court erred in denying appellants a jury for a trial of the issues in this proceeding, that was an error of law which occurred at the trial, and can not be reviewed on appeal, but only on petition in error." The same principle is announced in *Ainsworth v. Taylor,* 53 Nebr., 484; *Alling v. Nelson,* 55 Nebr., 161; *Village of Syracuse v. Mapes,* 55 Nebr., 738; and *Frenzer v. Phillips,* 57 Nebr., 229. The case at bar having been brought to this

court by appeal, does not present these questions, and they will not be considered.. The remaining assignments will be considered in the order named.

It is contended that the various petitions and cross-petitions fail to state facts sufficient to constitute a cause of action, because they do not allege that the actions were brought in behalf of all the creditors, and because there are no allegations that certain of the grantees participated in the fraud of their grantors. We are unable to find reasons in support of the contention that the petitions must allege that the suits were brought for the benefit of all the creditors, and our attention has not been called by counsel to any authority holding, in a case such as the case at bar, where no receiver has been asked for or appointed, that such an allegation is necessary. As regards the second contention, it must be regarded as the settled rule in this state that, where the petition alleges that the grantor fraudulently made the conveyance for the purpose of hindering and delaying his creditors in the collection of their debts, and that the conveyance was made without consideration, the pleading states a cause of action, notwithstanding it fails to allege that the grantee had knowledge of or participated in the fraud. Wait, Fraudulent Conveyances [3d ed.], sec. 200; *Farrington v. Stone*, 35 Nebr., 456. Measured by this rule, it will be found that each of the petitions and cross-petitions states a cause of action.

Some of the petitions, regarding certain conveyances made, failed to state that the grantee had knowledge of or participated in the fraud of the grantor. But each of such petitions contained an allegation that the conveyances were made by the grantors for the purpose of hindering, delaying and defrauding their creditors in the collection of their debts, and that the conveyances were made without consideration. Regarding the conveyance to the R. L. Downing Lumber Company, it is alleged that the R. L. Downing Lumber Company was organized for the purpose of taking and holding property of R. L. Downing, and for the purpose of permitting the said R. L. Downing to continue in

business as a lumber merchant without subjecting his property to the payment of his debts, and that none of the stockholders had any interest in the corporation except R. L. Downing; and, in addition to this, it was alleged that each of the conveyances was made wholly without consideration, and for the purpose of hindering and delaying his creditors in the collection of their debts, and that this fraudulent purpose was well known to said grantees, and that the "said grantees hold the title to said premises in trust for said grantors as aforesaid, who are the real and true owners of the said premises." The effect of these allegations is, among other things, to charge that the property is still the property of the debtor R. L. Downing, and that it has been so conveyed as to place it beyond the reach of an ordiary execution on a judgment at law, and for that reason states a ground for equitable relief. Regarding the conveyance to George H. Downing, it is alleged that the conveyance was unlawfully and fraudulently made on the part of the grantors, and that said George H. Downing well knew of the fraudulent purpose of said conveyance, and that the same was made without any consideration. It is a statutory rule of construction in this state that, where a pleading is assailed upon the ground that it does not state facts sufficient to constitute a cause of action, it shall be liberally construed. Code of Civil Procedure, sec. 121; *Hartzell v. McClurg,* 54 Nebr., 313.

It is contended on the part of appellants that executions issued on the various judgments and placed in the hands of the sheriff of Buffalo county were returned by the direction of the judgment creditors, and that at the time the Kearney Opera House Company had property subject to execution out of which the judgment could have been made. The rule seems to be founded in reason that in a judgment creditors' bill to set aside a fraudulent conveyance, the return of the sheriff to the execution upon the judgment *nulla bona* is conclusive of the fact that the creditor has exhausted his legal remedies. It would be of no avail to ask him to do more than this. He has no means of satisfying

his judgment except by an execution at law; and if he has procured an execution to be issued, and placed it in the hands of the proper officer, and the same has been returned by the officer *nulla bona,* the creditor has done all that he can be asked to do. The rule seems to be settled by the great weight of authority that to sustain a creditors' bill to set aside a fraudulent conveyance it is only necessary to show that the execution has been issued on the judgment, and returned by the proper officer *nulla bona;* and that the return of the officer can not be inquired into in the creditors' suit, but that the remedy is by a direct proceeding in the court out of which the execution issued, or by an action against the officer. *Weil v. Lankins,* 3 Nebr., 384; *Jones v. Green,* 1 Wall. [U. S.], 330; *William Wright Co. v. Frazer,* 66 N. W. Rep. [Mich.], 954. Waite, Fraudulent Conveyances [3d ed.], section 74, says: "In cases where fraud is established, the creditor does not claim through the debtor, but adversely to him, and by a paramount title, which overreaches and annuls the fraudulent conveyance or judgment by which the debtor himself would be estopped. It follows, from the principles suggested, that a judgment obtained without fraud or collusion, and which concludes the debtor, whether rendered upon default, by confession or after contestation, is, upon all questions affecting the title to his property, conclusive evidence against his creditors, to establish, first, the relation of creditor and debtor between the parties to the record, and secondly, the amount of the indebtedness. This principle is assumed in the New York statute in relation to creditors' bills, and is so decided in *Rogers v. Rogers* [3 Pai. Ch., N. Y., 379]. The execution issued upon the judgment shows that the remedy afforded at law has been pursued, and of course is the highest evidence of the fact. The return shows whether the remedy has proved effectual or not, and, because of the embarrassments which would attend any other rule, the return is generally considered to be conclusive. The court will not ordinarily entertain inquiries as to the diligence of the officer in endeavoring to find property upon which

to levy,"—citing *Jones v. Green, supra.* In the case of *Illinois Malleable Iron Co. v. Graham,* 55 Ill. App., 266, decided in 1894, the third paragraph of the syllabus is as follows: "A return made by the sheriff which recites that a personal demand has been made and no property turned out or found, is the highest evidence the law affords of the fact that the legal remedies of the plaintiff have been exhausted, and is a sufficient return to confer jurisdiction in equity to maintain a creditors' bill." Appellants complain that the return is not sufficient, on the ground that it appears that the return was made at the request of plaintiffs' attorney. This alone is not sufficient to invalidate the return, if the sheriff has made a bona-fide attempt to ascertain if there is any property upon which to levy, and the attempt has failed. It appears that he did this. In *Illinois Malleable Iron Co. v. Graham, supra,* it is said: "There must be a bona-fide effort on the part of the sheriff to satisfy the execution, and after a demand upon the execution debtor for, and a refusal by him to turn out property to satisfy the debt, the superadded fact that the return was hastened by the direction of the plaintiff does not affect the force or validity of the sheriff's official return." In *Platt v. Cadwell,* 9 Pai. Ch. [N. Y.], 386, it is said: "If the return of the sheriff in such a case [creditors' bill] is irregular, the remedy of the defendant is to apply to the court of law to set aside the return for irregularity," and further, that a chancery court would stay the proceedings upon the creditors' bill for a reasonable time, to enable the defendant to apply to the court of law to set aside the sheriff's return upon the execution, where there is a reasonable probability that the court of law will grant such application. It follows, therefore, that the court did not err in sustaining the demurrers to that portion of the answers of appellants which pleaded that the Kearney Opera House Company had property subject to execution.

It is contended that there is not sufficient evidence to sustain the findings and judgment of the trial court. An extended discussion of the evidence heard by the trial court

would be of no material advantage. We have read all the evidence preserved in the bill' of exceptions, and conclude that the findings are supported by sufficient competent evidence. Under the rule in this state the question on appeal is not whether the preponderance of the evidence is in favor of or against the findings of the lower court, but simply whether there is sufficient competent evidence to sustain the findings. While the evidence is not of as satisfying a character as it might be, yet we are unable to say that it does not support the findings made by the trial court.

This leaves for consideration the correctness of the ruling of the trial court in directing that the proceeds resulting from the sale of the property uncovered should be prorated among the various creditors in proportion to the amount of their judgments. It is contended with much earnestness and ability by counsel for certain of the appellees that the court erred in its order requiring the various petitioners and cross-petitioners to prorate in whatever proceeds might be realized from the sale of the property uncovered. In answer to this contention, counsel for the other appellees say that this question is not before this court; that no bill of exceptions has been settled or allowed upon that question; that no cross-appeal has been filed; and that the appellees complaining can not accept the decree of the trial court in part and reject it in part, and appeal. These objections seem not to be well taken. An examination of the record discloses that the Nebraska National Bank of Omaha, the Rock Island National Bank, and the First National Bank of Negaunee filed in this court, within proper time, a notice of cross-appeal, and a brief in support of their appeal from that part of the judgment requiring the various creditors to prorate. This is sufficient to present the question to this court for consideration.

As to judgment creditors who bring individual suits, and prosecute them to judgment on their own account and solely at their own expense, the rule may be regarded as settled that the creditor first in point of time in the com-

mencement of his suit is entitled to priority. The reason of this rule seems to be that creditors who, by superior diligence, prosecute creditors' bills and uncover property fraudulently conveyed, should be first paid. With this rule, so far as applicable, we find no fault. But the rule ought not to be extended beyond the reason for its existence. A creditor, in addition to filing his bill, must prosecute his action. Indeed, if he proceeds no further than filing his bill, there would be no proceeds to divide. He must do more. He must uncover property; he must procure fraudulent conveyances to be set aside to entitle him to reward and priority. There can be no doubt that the rule in question has no application in cases where a receiver has been appointed, who has taken possession of the property; or where the property, for other reasons, is in the hands of the court for distribution. *In re Howard*, 9 Wall. [U. S.], 175. Again, the rule has no application in a general creditors' bill, where suit is brought by one creditor on behalf of himself and all others who wish to join and contribute to the expenses of the litigation. Beach, in his Modern Equity Practice, section 576, says: "Where a bill is filed by judgment creditors in behalf of all judgment creditors to reach property which could not be effectively reached at law, and no order is made requiring others to intervene by a certain time or be barred of their rights, all judgment creditors who choose to intervene, even though not until after an interlocutory decree ordering a sale, are entitled to share ratably with the complainants in the proceedings." In this case separate bills were filed by the three creditors who complain of the action of the court. Long before the trial of the cause, and, so far as disclosed by the record, before any other action was taken by such creditors, all of the petitions and cross-petitions of various other creditors were, by agreement of all, and by order of the court, consolidated into one action. To this order no exceptions were taken by any of the creditors. The court made no order respecting priorities, nor was such order requested by the creditors complaining. If the latter, or any of them, had, at the time, objected to the order of con-

solidation, or had then requested the court to determine their respective priorities, it would undoubtedly have been the duty of the court to fix the priorities or decline to consolidate the cases. Such was the ruling in the case of *Monroe v. Lewald,* 12 S. E. Rep. [N. Car.], 287, where it is said: "In a general creditors' bill, all of the creditors should be permitted to come in and be made parties. In a judgment creditors' bill this is not required, and it may be instituted by one or any number of creditors who may choose to unite. They may invite others to come in and join them in the prosecution of the suit, but unless they do so the court can not, by compelling in proper cases the joinder of new parties, or by consolidating the action with other proceedings, deprive the original suitors, or those who have with their consent united with them, of any priorities they may have acquired by their superior vigilance." Upon principle it seems clear to us that these creditors complaining, by permitting the consolidation without objection, and without having the question of their priorities determined, are in exactly the same position as if each, in filing his bill, had extended a general invitation to all creditors to come and join with him in the suit, each paying his proportionate share of the expenses of the litigation. Suppose, as illustration, that the Nebraska National Bank of Omaha, which was the first creditor to file its bill, had, after doing so, taken no other or further steps in the prosecution of its case, and after the cases were consolidated preparations were begun to take testimony and prepare for trial. Suppose, then, it had rested on its oars, not called a single witness, made no effort to uncover fraud in the conveyances mentioned in the petition, will any one contend that, when the result was reached, it would be entitled to have its claim first paid to the exclusion of the other creditors who, by diligence, had secured results? So far as this record discloses, we may presume that such was the fact. We are unable to point out from the record the name of a single witness called by the Nebraska National Bank of Omaha. We are unable to determine what, if any, depositions were taken by its au-

thority or at its expense. There is nothing in the record to disclose what was done by this particular creditor, if anything, to accomplish the result for which all were striving. This is a very important and a very expensive suit. A large amount of testimony was taken, some of it in distant parts of the country; and many days were consumed in the actual trial of the cause. It was of very material benefit and advantage to the three complaining creditors, as well as to all others, to have the various petitions and cross-petitions consolidated, and tried as one action. If there had been no consolidation, the costs and expenses of each of the complaining creditors might have amounted to as much as the costs of the consolidated suit. The county treasurer and many other of the creditors, aside from those complaining, contributed to the result by employing able counsel, and by payment of costs and expenses of the litigation. If the contention of the complainants is to be sustained, then none of the other creditors is to receive anything. It is not difficult to conceive that the intervening creditors consented to the consolidation believing that they were to share pro rata in the proceeds, and that the complaining creditors consented to the consolidation believing that the interveners, joining with them, would contribute materially to a successful termination of the suit; otherwise there would have been nothing to gain by any of the parties, and each would have preferred severally to prosecute his own action. Is it reasonable to suppose that the other creditors would have come in and furnished money and counsel to secure results, knowing that, if the suit was successful, they would receive nothing? If the complaining creditors, at the time the suggestion to consolidate was made, had secured an order that by such consolidation they should not lose their priorities, the intervening creditors would then have been in a position to decide whether they would submit to the consolidation or remain aloof, and adopt other legitimate means to secure the satisfaction of their claims, assuming an attitude of hostility to, instead of co-operation with, the creditors com-

plaining; and it is not possible to foretell but that this would have resulted in defeat to the complaining creditors. When the order to consolidate was made, these creditors should have spoken. They said nothing, but maintained what to them doubtless seemed a discreet silence. Many times actions or silence may speak louder than words. By remaining silent, and accepting the aid and benefit of money and counsel of other creditors, they, in effect, extended an invitation to such creditors to come in and share in the expenses and proceeds. Having kept silent when they should have spoken, equity will not permit them to speak now. They have, by their own acts, lost their right to any priority to which they might otherwise have been entitled. The trial court, upon this branch of the case, found as follows: "Upon the question of the respective rights of the plaintiff and cross-petitioners to the proceeds of the sale of the property herein mentioned, the court finds that the plaintiff and cross-petitioners had been acting together in the prosecution of this suit; that some of said parties have paid and incurred much greater expense than others in the prosecution of this action, and that the work of some has not only been for the benefit of themselves, but for the benefit of others; that the court can not ascertain and repay the expenses so expended, and for that reason finds that the said parties first beginning action to set aside the transfers are not entitled to have their debts paid first; and it is therefore considered, adjudged and decreed that from the proceeds of the sale of the property the parties shall be paid pro rata, according to the amount herein found to be due each of them from each defendant, and that the cost heretofore advanced in this case for the taking of depositions and witness fees expended in taking such depositions shall not be taxed." This judgment of the trial court is presumed to be correct, and the burden is upon appellees complaining to point out wherein it could have been otherwise rendered, and justice and equity done. This they have failed to do. In such proceedings as this it is the duty of the trial court to render a decision which

is fair, just and equitable between the parties. Beach, in his valuable work on Modern Equity Practice, section 576, says: "The practice of permitting judgment creditors to come in and make themselves parties to a creditors' bill, and thereby obtain the benefit of the suit, assuming at the same time their portion of the costs and expenses of the litigation, is well settled." This doctrine has been recognized in the case of *Johnston v. Markle Paper Co.*, 25 Atl. Rep. [Pa.], 885, and is put in apt language by the court as follows: "In an action by a creditors' bill, where other creditors are permitted to intervene and become parties to the bill, all are entitled to share pro rata in the fund available for payment of debts." There is no question that in principle the authority cited is as applicable to a case where the suits of the creditors are consolidated, as in cases where creditors are permitted to intervene. The same principle is recognized in the case of *Craig v. California Vineyard Co.*, 46 Pac. Rep. [Ore.], 421, wherein it is said: "Where an attachment is held void as to subsequent attaching creditors, who have pooled their claims and joined in a common suit for their mutual benefit, the court may distribute the fund among them pro rata, instead of in the order of the lien of their respective attachments." It would be manifestly inequitable to permit the appellees complaining to absorb the entire proceeds of the suit, leaving the other creditors, who contributed as much to the general result, without anything. In this case the maxim that equity means equality is the better rule, and will be followed.

From an examination of the entire record, we find no error, and it is therefore recommended that the judgment of the trial court be in all respects affirmed.

HASTINGS and DAY, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.